| | |
|---|---|
| 1 | William D. Hendricks CA Bar 221071 |
| 2 | whendricks@wdhlegal.com<br>LAW OFFICES OF WILLIAM D. HENDRICKS |
| 3 | 20350 Ventura Blvd., Suite 100<br>Woodland Hills, CA 91364 |
| 4 | Telephone:    818-961-9000<br>Facsimile:     888-636-2420 |
| 5 | Attorneys for Plaintiff TARONDRA NELSON |
| 6 | |
| 7 | James T. Conley CA Bar No. 224174<br>james.conley@ogletree.com |
| 8 | Caitlyn B. Emery CA Bar No. 332987<br>caitlyn.emery@ogletree.com |
| 9 | OGLETREE, DEAKINS, NASH, SMOAK &<br>STEWART, P.C. |
| 10 | 4660 La Jolla Village Drive, Suite 900<br>San Diego, CA  92122 |
| 11 | Telephone:    858-652-3100<br>Facsimile:     858-652-3101 |
| 12 | Attorneys for Defendant |
| 13 | WAL-MART ASSOCIATES, INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TARONDRA NELSON, an individual,<br><br>                       Plaintiff,<br><br>            v.<br><br>WAL-MART ASSOCIATES, INC., a Delaware Corporation, TRAVIS JOHNSON, an individual, NANH NGUYEN, an individual, and DOES 1 through 50, inclusive,<br><br>                       Defendants. | Case No. 2:24-cv-06344-JLS-SSC<br><br>**STIPULATION AND [PROPOSED] ORDER FOR INDEPENDENT MEDICAL EXAMINATION OF PLAINTIFF TARONDRA NELSON AND PROTECTIVE ORDER RE: DEFENDANT'S INDEPENDENT MEDICAL EXAMINATION OF PLAINTIFF TARONDRA NELSON**<br><br>Complaint Filed:     July 5, 2022<br>Removal Date:      July 26, 2024 |

Case No. 2:24-cv-06344-JLS-SSC
STIPULATION AND [PROPOSED] ORDER FOR INDEPENDENT MEDICAL EXAMINATION OF PLAINTIFF TARONDRA NELSON AND PROTECTIVE ORDER RE: DEFENDANT'S INDEPENDENT MEDICAL EXAMINATION OF PLAINTIFF TARONDRA NELSON

**TO THE COURT:**

**COMES NOW** Plaintiff TARONDRA NELSON ("Plaintiff") and Defendant WALMART ASSOCIATES, INC. ("Defendant"), collectively the "Parties," by and through their respective counsel of record, hereby stipulate and agree as follows:

WHEREAS, Defendant asserts that Plaintiff has placed her mental condition at issue in this litigation and as a result is entitled to a Defense Mental Examination;

WHEREAS, Plaintiff has agreed to undergo a Defense Independent Mental Examination subject to the terms and conditions set forth in this Stipulation;

WHEREAS, this Stipulation and Protective Order for the Defense Independent Mental Examination provides for the designation of certain material used in the Exam and resulting from the Exam to be deemed Highly Confidential, which will be subject to this Stipulation and Protective Order;

**NOW, THEREFORE**, based on the above recitals, the Parties, through their undersigned counsel of record, stipulate that the following terms and conditions shall apply to the neuropsychological evaluation:

1. **Medical Examiner**: Dr. Judy Ho, Ph.D., a qualified medical examiner (referenced below as the "medical examiner"), will conduct the mental examination of Plaintiff.

2. **Mental Examination**: Plaintiff shall submit to a mental examination before the medical examiner pursuant to the terms of this stipulation.

3. **Attendees**: Only Plaintiff, the medical examiner, the medical examiner's Board registered testing technician, and a professional translator (when necessary) shall be present for the mental examination.

4. **Scope**: The purpose of the mental examination is to assess Plaintiff's claimed cognitive injuries, and mental and emotional distress and to evaluate the nature, causes, and extent of such distress. The examiner may question Plaintiff about treatment sought for these conditions/injuries and the cost of such treatment. The examiner will not question Plaintiff about the amount of monetary damages sought in this action.

5. **Date and Location**: Plaintiff may travel to the physical office of the examiner at 2447 Pacific Coast Highway, Suite 200, Hermosa Beach, CA 90254 for the examination, where she will be given a private room conference room for the evaluation. Social distancing, masking, and cleaning precautions will also be taken for the evaluation to reduce disease transmission. Plaintiff must also complete the COVID-19 screening and questionnaire prior to proceeding, and plaintiff should not appear for the evaluation if they are experiencing any cold, flu, or other symptoms that might be associated with COVID-19.

6. Alternatively, the medical examiner can conduct the mental examination via telehealth platform (i.e., HIPAA-compliant Zoom) Plaintiff agrees she will physically be in the state of California for the telehealth evaluation, as that is the requirements of Dr. Ho's California license to practice. The plaintiff will require a laptop or tablet for the evaluation, a stable Wi-Fi connection, a desk and chair to work, and a quiet room without disruption.

7. **Time of Examination**: The parties will stipulate to the time for the beginning of the examination, and Plaintiff will appear on the agreed upon date, place, and at the examination time. If the exam has not commenced within 30 minutes of the agreed upon time, Plaintiff will be free to leave the medical examiner's office. Similarly, if plaintiff does not arrive within 30 minutes, Dr. Ho will reserve the right to cancel the evaluation day and reschedule at another time when plaintiff can show up on time.

8. **Duration**: The mental examination shall be limited to 2 days of evaluation, with each day being seven (7) hours exclusive of breaks for a total of 14 hours. Breaks for personal comfort, lunch or necessity will be permitted as needed, but will be in addition to the seven (7) hour duration of the mental examination each day and will extend the duration of the mental examination by the length of the breaks taken. If any period of time exceeding 30 minutes goes by when Plaintiff is not being examined or a test is not being administered, except during agreed upon breaks, then the examination is to be considered completed and Plaintiff will be free to leave.

9. **Examination**: The mental examination may include an interview of Plaintiff and only those tests identified below:

     **a.**    **Interview**: The interview shall cover a variety of relevant topics, including background information; the reported circumstances of onset of the alleged emotional injury or injuries; and how those symptoms have unfolded over time to the present, including any other assessments, treatments, or functional impairment. Pertinent areas of inquiry with regard to Plaintiff's background shall include developmental history, education, employment, social and marital history, legal history (such as disability claims, if any), general medical history, prior psychiatric history, substance use, and family history. The defense medical examiner will elicit from Plaintiff an account of the onset and course of Plaintiff's emotional problems related to the alleged conduct of Defendant, culminating in a review of current psychiatric and physical complaints. The purpose of the interview is to differentiate between emotional complaints that may be pre-existing and unrelated to the alleged actions of Defendant; complaints that arose concurrently but unrelated to alleged actions of Defendant; complaints that arose as a result of Defendant's alleged conduct; complaints that are actually due to substance use or medications; complaints that are due to an underlying general medical disorder; or complaints that arose subsequent to the alleged actions of Defendant and are unrelated to Defendant's alleged conduct toward Plaintiff.

     **b.**    **Procedures**: The methods described below are supported by the relevant organizations including the test distributors and professional committees that have devised best practices given this evaluation format. The examiner will require a mailing address for the plaintiff (in order to mail secure materials ahead of time, to be opened only while on camera for the telehealth evaluation to be used during the session). The examiner will also require an email address for the plaintiff (in order to email other self-administered psychological questionnaires that are hosted on a secure server, that are to be taken by the plaintiff during the evaluation to assess psychological and personality functioning). Note that none of these materials can be

copied, nor can photos be taken, as they are subject to copyright, legal, and ethical codes in how their use and distribution are limited, and considered trade secrets for the neuropsychology field and constitute raw data. The defense medical examiner has ethical and legal obligations to maintain their confidentiality and administer these instruments with fidelity to standardized procedures.

    c. **Testing**: The following tests and procedures will likely be used in the neuropsychological exam to assess cognitive, psychological, and personality functioning: MMPI-3 (MMPI-3), Million Clinical Multiaxial Inventory (MCMI-IV), Personality Assessment Inventory (PAI), Mini-Mental State Examination-2 (MMSE-2), PTSD Checklist with Life Events Checklist (PCL-5 with LEC-5), Structured Clinical Interview for DSM-5 (SCID-5), Structured Interview of Reported Symptoms, 2nd Edition (SIRS-2), Structured Inventory of Malingered Symptomatology (SIMS), Substance Abuse Subtle Screening Inventory (SASSI-4), Beck Anxiety Inventory (BAI), Beck Depression Inventory (BDI-II), Beck Hopelessness Inventory (BHI), Weschler Adult Intelligence Test-Fourth Edition (WAIS-IV), Weschler Memory Scale – Fourth Edition (WMS-4), Delis-Kaplan Executive Function System (D-KEFS), Woodcock Johnson Test of Cognitive Abilities 4th Edition (WJ-IV), Neuropsychological Assessment Battery (NAB), Boston Naming Test, Hooper, Developmental Test of Visual Perception – Adolescent and Adult (DTVP-A), Rey Complex Figure Test (RCFT), Rey 15 Item, Dot Counting Test, b test, Advanced Clinical Systems Tests, Wisconsin Cart Sort Test (M-WCST), Iowa Gambling Test (IGT-2), Test of Everyday Attention (TEA), Rivermead Behavior Memory Test (RBMT), Test of Memory and Learning (TOMAL-2), Test of Premorbid Functioning (TOPF), Social Cognition, Conners Performance Test (CPT 3), Memory for Intentions Test (MIST), Booklet Category Test.

10. **No Physical Examination**: The mental examination will involve no physical examination and involve no blood tests or other intrusive medical studies or procedures.

11. **Recording**: In addition to the defense medical examiner's notes, the medical examiner may memorialize the clinical interview portion only of the mental examination with a voice-recording, either digitally or by audiotape. This recording shall be produced to Plaintiff. Plaintiff may also voice-record the clinical interview portion of the mental examination. This recording shall be produced to Defendant. Recordings produced subject to this Section shall be deemed Highly Confidential, subject to the Protective Order and the restrictions set forth in paragraphs 16 and 17 herein. Neither the defense medical examiner nor Plaintiff may videorecord any portion of the mental examination. Dr. Ho and/or her staff will accommodate all reasonable requests to accomplish this recording, including, but not limited to taking any necessary breaks during the examination; taking a break if technical difficulties arise, making available all other reasonable accommodations to allow the effective recording of the defense mental examination as provided by Code of Civil Procedure §2032.530. The standardized assessment portions of the examination, including the administration of paper-and-pencil questionnaires, cognitive tests, computerized questionnaires, and the administration of the semi-structured diagnostic interview (i.e., SCID 5) cannot be audio-recorded, videotaped, nor can photos be taken of the materials. These protocols constitute raw data and trade secrets and the defense medical examiner has ethical and legal obligations to maintain their confidentiality and administer these instruments with fidelity to standardized procedures.

12. **Exchange of Raw Data**: At the conclusion of any testing of Plaintiff by Dr. Ho, a copy of the actual test pages, raw data generated and all test results regarding Plaintiffs all be exchanged simultaneously with Plaintiff's respective experts in the specified field of expertise, whose information will be provided at a subsequent time. No other individuals will be able to receive said raw data and test materials due to the ethical and legal obligations described in sections below. This is the usual and customary practice that allows Dr. Ho to abide by her ethical and legal obligations. However, if plaintiff counsel insists on copies of these materials themselves, all materials will only be produced after a signed protective order by the court is provided according to the terms set forth in sections 16 and 17.

13. **Fees Associated with Examination**: Defendant will be responsible for all fees associated with this examination, including Dr. Ho's cancellation policy.

14. **No Disclosure of Insurance Information:** Plaintiff will not provide the defense medical examiner with his medical insurance information or other insurance information.

15. **Plaintiff Will Not Create Documentary Evidence**: Plaintiff's right not to create items of demonstrative evidence for defendants' use will not be violated. Therefore, Plaintiff will not be compelled to create any items of potential documentary evidence and will not fill out any charts, new patient records, forms, or histories that may be requested or provided by the defense medical examiner. Plaintiff will answer questions orally. Plaintiff recognizes the examiner's need to obtain a relevant medical history and will answer any reasonable relevant medical history questions posed by the examiner. Plaintiff will not provide or create a written medical history.

## PROTECTIVE ORDER

16. **Confidential Nature of Examination and Reports Protective Order:** The tests taken by Plaintiff as part of the mental examination, along with any notes and/or written reports and/or records maintained in any format, including electronic data, by Examiner are Highly Confidential medical records relating to Plaintiff's mental health. These records are Highly Confidential and shall not be subject to distribution without the written authorization of the Plaintiff to anyone except for counsel for Defendant, Defendant's Counsel's consultants, Counsel for Plaintiff, Plaintiff's mental health expert or consultant, and Plaintiff's mental health physician who shall treat these documents as Highly Confidential and subject to a protective order. Said records may be used by defense counsel in preparation for trial, in trial and in other proceedings in this matter, but for no other purpose. These records may not be used as exhibits to documents filed with the court except if filed under seal. At the conclusion of the litigation in this matter, whether by way of settlement or final judgment, all counsel must destroy all copies of Plaintiff's mental health records in their possession, custody and control and provide Dr. Ho with a certificate of destruction within 30 days of the conclusion of the litigation or appeal therefrom.

17. **Production of Examiner's Testing and Raw Data:**

a. <u>Testing and Raw Data to Plaintiff's Mental Health Expert</u>: The defense medical examiner will provide to Plaintiff's mental health expert, as retained and designated by Plaintiff in writing in this action ("Plaintiff retained mental health expert"), all testing and raw data related to or generated by the mental examination. Similarly, Plaintiff's retained mental health expert shall also disclose to the defense medical examiner all testing and raw data related to or generated by any mental examination of Plaintiff conducted by Plaintiff's retained health expert.

b. <u>Production of Testing and Raw Data to Counsel</u>: Providing raw data to counsel is not customary or routine, nor is it consistent with best practices of neuropsychologists and psychologists, due to a number of ethical and legal obligations all psychologists should abide by. By exchanging data with a retained expert, this expert may interpret and explain results of raw data and testing results to counsel in order to aid their preparation for trial and other case activities. However, if counsel insists on receiving such raw data, then a specific type of protective order must be obtained which must be signed by counsel and the court. Specifically, such a protective order must limit the distribution of raw data to the smallest audience possible (counsel, the smallest group of assistants/staff of the counsel, and mental health/psychology experts who are consulted for the case), such records cannot be filed, and if they must be filed, then must be filed under seal), and the terms "raw data and test results" must be designated specifically into the protective order as the class of information subject to these provisions. These records are to be deemed Highly Confidential and shall not be subject to distribution to anyone except for counsel for Plaintiff and any mental health professional retained or consulted, who shall treat these documents as Highly Confidential and subject to a signed and executed protective order. Said records may be used by Plaintiff's counsel in preparation for trial, in trial and in other proceedings in this matter, but for no other purpose. Plaintiff counsel may not give these records to anyone except the smallest group of people

necessary to prepare for legal proceedings. The content of these records may not be used as exhibits to documents filed with the court except if filed under seal. At the conclusion of the litigation in this matter, whether by way of settlement or final judgment, all counsel shall destroy all copies of all testing and raw data related to or generated by the mental examination in their possession, custody and control and provide Defendant's counsel with a certificate of destruction within 30 days of the conclusion of the litigation or appeal therefrom. Within 30 days of the exam, the defense mental examiner will provide to Plaintiff's counsel, all testing and raw data related to or generated by the mental examination only after the entry of protective order.

**THEREFORE**, the Parties, through this Stipulation, respectfully ask that this Court issue an Order according to the Parties' Stipulation above.

DATED: March 26, 2025    LAW OFFICES OF WILLIAM D. HENDRICKS

By: /s/ *William D. Hendricks*
William D. Hendricks
Attorney for Plaintiff TARONDRA NELSON

DATED: April 1, 2025    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ *James T. Conley*
James T. Conley
Caitlyn B. Emery
Attorneys for Defendant
WAL-MART ASSOCIATES, INC.

**ATTESTATION – L.R. 5-4.3.4**

I attest that all other signatories listed on this signature page, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Date: April 1, 2025				By:	/s/ *James T. Conley*
							James T. Conley

**[PROPOSED] ORDER**

**GOOD CAUSE APPEARING**, the Court hereby approves this Stipulation to conduct the Independent Mental Examination, and the Parties are ordered to comply with the terms of the Protective Order set forth above.

**IT IS SO ORDERED.**

Dated:   April 3   , 2025

_____
Hon. Stephanie S. Christensen
United States Magistrate Judge